# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:19CR00049 |
| v. ) | **OPINION** |
| ) | |
| **HUNTER ROYAL,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Whitney D. Pierce, Assistant United States Attorney, Abingdon, Virginia, for United States; Jeffrey L. Campbell, CAMPBELL CHAFIN, P.C., Marion, Virginia, for Defendant.*

Hunter Royal, an incarcerated person sentenced by this court, has filed a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, alleging that he did not sufficiently understand the nature and consequences of his plea agreement, that his sentence violates the Eighth Amendment and is substantively unreasonable, and that he was deprived of effective assistance of counsel. The United States has filed a Motion to Dismiss, and the defendant has failed to file a timely response. For the reasons stated, I will grant the Motion to Dismiss and dismiss the § 2255 motion.

I.

In June 2019, Hunter Royal, age 21, using the alias "Abby" on the social media platform Snapchat, convinced a 12-year-old girl to send him sexually explicit

photographs of herself.  After receiving a photo of the minor girl in her undergarments, Royal began threatening that he would post the photo on the internet if the girl did not send nude photos.  The girl eventually acquiesced and sent one photo, and when she did not send more, Royal threatened to post the nude photo on the internet.

The girl blocked the Abby account and informed her parents, who reported the interactions to law enforcement.  Law enforcement used the girl's phone to unblock the Abby account and began communicating with Abby/Royal through the girl's account.  Royal continued his solicitations and threats.

Thereafter, law enforcement was able to track the Abby account to Royal and obtained a search warrant.  They found over 7,000 messages from Royal to other persons, many of which were solicitations for sexually explicit images, and at least 20 to 25 were to persons who clearly identified themselves as minors.  Following additional investigation, Royal confessed that he was the subscriber and user of the Abby account and that he had solicited and received sexual images from numerous females, including minors.  Law enforcement also discovered Royal had other Snapchat accounts that he used for such communications and that he had sent messages to over 1,500 accounts, with approximately 250 of them to accounts in which the persons responding to the messages indicated that they were between the ages of 12 and 17.

Royal was initially charged on September 18, 2019. Soon after, his counsel moved for a psychological or psychiatric examination, and Royal was committed to the Bureau of Prisons (BOP) for the evaluation. On February 3, 2020, a written report was filed, which included a part entitled "Competency to Stand Trial Evaluation" (Competency Evaluation), ECF No. 36, and a part entitled "Criminal Responsibility Evaluation" (Responsibility Evaluation), ECF No. 36-1, both based on evaluations of Royal at the Metropolitan Correctional Center in New York City, beginning November 20, 2019, to January 6, 2020, by Samantha E. DiMisa, Ph.D, a licensed forensic psychologist. The Responsibility Evaluation concluded that

> Mr. Royal understood the consequences of his alleged behavior and was able to indicate the legal and moral wrongfulness of the alleged actions, as well as potential for punishment for his behavior. Additionally, he is aware of the details surrounding the alleged charges, even though there are inconsistencies in his own self-report regarding if he solicited sexual images from minors as well as adults. According to the results of the psychological assessment and behavioral observations during this evaluation, there is no indication of intellectual disability, though he does present with borderline intellectual functioning as described [elsewhere in the evaluation] in further detail; no deficits in social functioning, or acute psychopathology that would lead to significant impairments in his daily functioning.
> . . . .
> . . . It is the opinion of this evaluator, Mr. Royal understood the wrongfulness of his actions and is responsible for his behaviors during the alleged offense.

*Id*. at 30–31.

Based on the Competency Evaluation and after a hearing, the magistrate judge found no reasonable cause to believe that Royal was presently suffering from a mental disease or defect to the extent that Royal was unable to understand the nature and consequences of the proceedings against him or assist properly in his defense.

On February 11, 2020, a grand jury returned a four-count Superseding Indictment, charging Royal with sexual exploitation of a minor and related offenses. He subsequently pled guilty to Count One of the Superseding Indictment, which charged persuading, inducing, enticing, and coercing minors to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e).  During the guilty plea colloquy, the court stated that it had read the report from Dr. DiMisa, and it questioned Royal about his mental state:

> The Court:  . . . [H]ow are you doing now as far as you think your mental abilities and competency are concerned?  Do you have any concern yourself about that?
>
> The Defendant:  No, Your Honor.

Plea Hr'g Tr. 6, ECF No. 91.

Royal's counsel also opined that he believed Royal to be competent. *Id.* at 7. Royal explained that he was taking an anti-depressant, but that it did not affect his

ability to understand the proceeding, and he did not report any other health problems. *Id.* at 7–8.

Royal's plea was made pursuant to a written plea agreement, and the court questioned Royal about whether he had had an adequate opportunity to read and discuss the agreement with his lawyer, and whether he was fully satisfied with his lawyer's representation. Royal answered affirmatively to each question. *Id.* at 8.

The government then summarized the terms of the plea agreement, including that the maximum statutory term of imprisonment was 30 years, the mandatory minimum was 15 years, and that Royal was waiving his right to appeal except to those issues for which the right to appeal could not be waived. *Id.* at 9, 10. Royal affirmed that the terms summarized by the government were in his plea agreement as he understood it.

The court asked Royal about whether he understood that he was giving up his right to appeal and that he was giving up his right to file a collateral attack, except for matters that could not be waived or a claim of ineffective assistance of counsel. *Id.* at 11–12. Royal confirmed that he understood. Royal also confirmed that no one had made any promise or threat that caused him to want to plead guilty. *Id.* at 12. The court then discussed the possible sentence with Royal:

> The Court: . . . And so I want you to make sure that that you understand, Mr. Royal, what the sentences, possible sentences are. So in this case – and I'm not telling you what the sentence is going to be, because there's no promise about that, but in terms of imprisonment, I cannot sentence

>you to less than 15 years in prison.  In other words, under the law, it has to be at least 15 years, but it can be as much as 30 years, okay?
>
>The Defendant:  Yes, Your Honor.

*Id.* at 13.

The court then explained the effect of the sentencing guidelines and that the court might impose a different sentence than that provided by the guidelines.  *Id.* at 16–17.  It ensured that Royal understood that his sentence could be different from any estimate he might have received from his attorney.  "In other words, there are not promises about any sentence that you might get in this case."  *Id.* at 17.  Royal affirmed that he understood.

As required, the Probation Office prepared a presentence investigation report (PSR) before sentencing.  The PSR indicated that Royal received treatment as a child for defiance, temper, attention deficit hyperactivity disorder, and bipolar disorder.  He had an Individual Education Plan while in school, which called for him to be placed in a self-contained classroom.  He had some prior criminal convictions for minor offenses such as underage possession of alcohol and driving on a suspended license.

Royal was sentenced by this court on March 30, 2021.  The court found that Royal had a total offense level of 41 and a criminal history category of I, translating to a guideline range of 324 to 360 months' incarceration.  The government argued that Royal should be sentenced to the statutory maximum — 360 months'

incarceration. Defense counsel submitted that a 15-year sentence, the mandatory minimum, would be appropriate, and referred to Royal as a "mentally limited young man" who "[didn't], quite frankly, understand" why he did what he did. Sent'g Hr'g Tr. 37, ECF No. 90. The court, citing to the serious nature of the crime and the substantial harm done to the victims and finding that Royal had a sufficient level of understanding that allowed him to grasp schemes and carry them out, but also recognizing his youth and "somewhat diminished capacity," *id.* at 40, imposed a sentence at the low end of the guidelines range to a total term of 324 months' imprisonment.

Royal now contends that he failed to appeal his underlying conviction because he did not sufficiently understand the appellate process or the terms of his plea agreement because of his diminished intellectual functioning. He contends that his responses during the plea colloquy were insufficient to establish that he sufficiently understood the consequences of his plea because the court did not specifically seek to ascertain Royal's intellectual functioning. Royal also asserts that his psychiatric examination and the accompanying evaluation did not establish his competency because the evaluator did not ascertain whether Royal could knowingly and intelligently plead guilty as opposed to entering into the agreement as "a consequence of his disabilities," namely his potential "susceptibil[ity] to overcompliance and unwarranted submission to authority figures." Def.'s Mot. ¶ 5,

ECF No. 81. He contends that his sentence constitutes cruel and unusual punishment considering his disabilities, the crime for which he was convicted, and the § 3553(a) factors, and that "[s]hould the Court have had before it an appropriate psychological evaluation detailing Mr. Royal's intellectual dysfunction, the Court's consideration of the sentencing factors may well have produced a different result at sentencing." *Id.* ¶ 6.

Relatedly, Royal asserts that his trial counsel was ineffective for failing to advise him of the nature of and his rights associated with the appellate process, by failing to adequately explain the terms of his plea agreement, and by failing to seek "an independent psychiatric examination" to determine whether Royal was intellectually and developmentally disabled and could knowingly and intelligently enter into a plea. *Id.* ¶ 5. Royal also alleges that his trial counsel represented to him that he would be sentenced to 15 years' incarceration.

The government has moved to dismiss Royal's motion, arguing that the record clearly establishes that Royal was capable of entering a valid plea, that the claims contradict Royal's sworn testimony during his plea colloquy and should be disregarded, and that Royal has failed to establish that his trial counsel was constitutionally ineffective.

II.

A.

I begin by addressing Royal's assertions related to the validity of his plea. In resolving a § 2255 motion that challenges a guilty plea, the court must first determine whether the petitioner's allegations, "viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).[1] Declarations in open court affirming a plea agreement "carry a strong presumption of verity." *Id.* at 221. "Thus, in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Id.*

Here, Royal's sworn plea colloquy statements directly contradict his claim that he did not enter the plea knowingly and intelligently, specifically that he did not understand the nature of his plea agreement, that he did not understand the consequences of the plea, and that he did not understand that his sentence might be different from any estimate provided by his attorney. Royal explicitly affirmed that he understood the terms of his agreement, that he was not guaranteed to be sentenced

---

[1] I have omitted internal quotation marks, citations, and alterations here and throughout this opinion unless otherwise noted.

to 15 years' imprisonment, that he was giving up certain rights, that he and his attorney had had an adequate opportunity to discuss the plea agreement before signing it that he was fully satisfied with his attorney's representation.

Royal's contention that the court did not sufficiently ascertain his intellectual functioning lacks merit. The court confirmed that it had considered the report from Dr. DiMisa. The court asked Royal directly if he was concerned about his mental abilities and competency considering his psychiatric evaluation. Royal stated that he was not. Moreover, Royal was able to answer the court's questions in turn and even asked the court to repeat a question, demonstrating Royal's ability to assess his own understanding:

> The Court: And do you understand that under your plea agreement you waive, or give up, your right to appeal except for matters that cannot be waived under the law?
>
> The Defendant: Could you repeat that, Your Honor?
>
> The Court: Do you understand that under this plea agreement you waive or give up your right to appeal except as to matters that cannot be waived under the law?
>
> The Defendant: Yes, Your Honor.

Plea Hr'g Tr. 11, ECF No. 91.

Nor does the scope of the psychiatric evaluation undermine the validity of his statements under oath or this court's finding as to Royal's competency to enter the plea because, as Royal contends, the evaluation did not determine "whether [Royal]

ha[d] the requisite capacity to waive a constitutional right to trial by pleading guilty" or that the plea was merely a product of potential disabilities because such disabilities can result in an increased susceptibility to "overcompliance and unwarranted submission to authority figures." Def.'s Mot. ¶ 5, ECF No. 81. The Competency Evaluation included an evaluation of Royal's intellectual capacity, including a finding that Royal met criteria for borderline intellectual functioning. Competency Evaluation 17, ECF No. 36. Royal indicated during the evaluation process that he understood what a guilty plea was and that his right to appeal "was relinquished," and the evaluator found that Royal possessed ability to make rational decisions regarding legal strategy. *Id.* at 22, 26. Royal's speculative assertion that he might be susceptible to unwarranted submission because of his disabilities is contradicted by both Dr. DiMisa's conclusion that he did not meet the criteria for a mental disease or defect and Royal's sworn statement that no one had made any promise or threat to force him to plead guilty. Accordingly, I find that Royal's claims regarding his ability to understand the nature and consequences of his plea directly contradict his sworn statements and are "palpably incredible and patently frivolous or false," *Lemaster*, 403 F.3d at 221.

Relatedly, the government argues that all of Royal's claims not challenging effective assistance of counsel must be dismissed pursuant to the collateral attack waiver in the plea agreement. I agree.

A defendant may waive his right to attack his conviction and sentence collaterally if the waiver is knowing and voluntary. *Id.* at 220. Royal's allegations that implicate voluntariness are that his attorney failed to adequately explain the plea agreement and the appellate process and that his own low intellectual functioning prevented his understanding. However, the record shows otherwise. Royal explicitly affirmed under oath that he understood he was giving up his right to collaterally attack his conviction and sentence:

> The Court: And do you understand that under your plea agreement you waive or give up your right to file a collateral attack, which means that in the future you could not try to have your conviction or sentence set aside except for matters that cannot be waived under the law or a claim of ineffective assistance of counsel?
>
> The Defendant: Yes, Your Honor.

Plea Hr'g Tr. 11–12, ECF No. 91. Royal agreed that he had had an adequate opportunity to discuss the plea agreement with his attorney and that he was satisfied with his attorney's representation. Thus, Royal's contentions that he did not knowingly and voluntarily waive his right to attack his sentence are directly contradicted by his sworn statements. For these reasons and the reasons explained above, I find that Royal's claims not challenging the effective assistance of counsel,

including the allegation that Royal's sentence constitutes cruel and unusual punishment, must be summarily dismissed pursuant to the collateral attack waiver.[2]

B.

I turn next to Royal's ineffective assistance of counsel claims. Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance was deficient, and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. The first prong requires a defendant to show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the prejudice prong, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694. In the context of a guilty plea, a defendant satisfies the prejudice prong by showing that but for counsel's errors, there is a reasonable probability that the

---

[2] Royal does not argue, nor do I find, that his allegations constitute a cognizable claim that enforcing the waiver "would result in a miscarriage of justice." *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023).

defendant would not have pleaded guilty and would have insisted on going to trial. *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). "This is an objective inquiry . . . and dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Id.*

Royal alleges that his trial counsel incorrectly advised that he would be sentenced to 15 years' incarceration. As an initial matter, an attorney's erroneous sentence estimation does not normally constitute constitutionally deficient performance. *United States v. Whited*, No. 2:15CR00015-023, 2019 WL 553453, at *2 (W.D. Va. Feb. 12, 2019). Moreover, this claim also directly contradicts Royal's sworn testimony that no one had made any promises to him that made him plead guilty and that he understood that he could be sentenced up to 30 years' imprisonment. Therefore, I find this allegation to be refuted by the record and to constitute a patently frivolous claim.

Royal also asserts that his trial attorney failed to adequately explain the plea agreement and the rights associated with the appellate process. As with Royal's other claims, this assertion is directly contradicted by the plea hearing and the plea agreement. Moreover, Royal does not allege that he would not have pleaded guilty and would have insisted on going to trial had counsel explained that he could receive a term of incarceration of up to 30 years and that he was giving up his right to appeal and collaterally attack the conviction and sentence, nor does the record support the

existence of such prejudice, especially in light of Royal's confession that he committed the acts in question. Royal also does not allege that he asked his attorney to appeal or that he would have had his attorney explained his appeal rights under the plea agreement. *United States v. Ashby*, No. 1:10CR00048-002, 2013 WL 1122650, at *4 (W.D. Va. Mar. 18, 2013) ("If the attorney could reasonably have believed that the defendant received a sentence expected under the terms of her plea agreement and has expressed no desire for an appeal or the attorney could reasonably have believed that the defendant had been thoroughly advised by the court about her right to appeal, no duty to consult arises, and the attorney's failure to consult with the defendant about appeal issues is not deficient conduct under *Strickland*."). Accordingly, I find that this claim fails both prongs of *Strickland*. To the extent that Royal contends his plea was rendered involuntary by trial counsel's alleged sentence estimation or failure to explain the terms of the agreement, I disagree for the reasons detailed previously.

Finally, Royal contends that his trial counsel's failure to move for "an independent psychiatric examination" to determine whether his plea and entry into the plea agreement were consequences of his disabilities and to "definitively ascertain whether he is, in fact" suffering from a disability "as suggested by the psychiatric evidence in the record" amounted to ineffective assistance of counsel. Def.'s Mot. ¶ 5, ECF No. 81. This claim is also directly contradicted by Royal's

sworn statement that he had no concerns about his mental abilities or competency. Moreover, counsel did move for an examination, and as noted, the resulting report from Dr. DiMisa discussed Royal's limited intellectual abilities and specifically included findings about Royal's understanding of the proceedings against him, his ability assist counsel, and his ability to rationally make decisions regarding his case. Counsel's failure to move for a second evaluation "does not rise to the high bar for deficient performance set by *Strickland*." *Knowles v. Mirzayance*, 556 U.S. 111, 125 (2009).

Moreover, Royal cannot show that a second examination "may well have produced a different result at sentencing." Def.'s Mot. ¶ 6, ECF No. 81. At sentencing, the court considered not only the report, but also the PSR, which detailed Royal's intellectual abilities and academic and mental health history, the sentencing memorandum and arguments regarding Royal's limited mental functioning, and testimony from the federal case agent who agreed that Royal seemed immature and younger than his actual age but who found that Royal also demonstrated that the had a "very deceptive capacity" and "a sophisticated side." Sent'g Hr'g Tr. 26, ECF No. 90. In rendering a sentence, the court was clear that it took Royal's "somewhat diminished" abilities into account. *Id.* at 40. Thus, I do not find that Royal can show a reasonable probability that his bottom-of-the-guidelines sentence would have

been different had counsel moved for a second psychiatric examination, so he cannot establish *Strickland* prejudice.

III.

For these reasons, the United States' Motion to Dismiss will be granted, and the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, will be dismissed. A separate final order will be entered herewith.

DATED: May 30, 2023

/s/  JAMES P. JONES
Senior United States District Judge